IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK HARVEY | : | CIVIL ACTION |
|     Petitioner, | : | |
| v. | : | |
| | : | |
| JOSEPH FOLINO, et al., | : | NO. 2:10-cv-1799 |
|     Respondents. | | |

ORDER

This petition for a writ of habeas corpus concerns the quality of representation Petitioner Derrick Harvey ("Harvey" or "Petitioner") received during his 1998 trial in the Philadelphia County Court of Common Pleas. It also brings into close focus the Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA") mandated deference to the factual findings of a state court. Presently pending is a Report and Recommendation submitted by Magistrate Judge Arnold C. Rapoport which, after careful analysis, recommends denial of the petition. (Doc. No. 44).

The procedural history of this action is as follows. Following a bench trial in the Philadelphia Court of Common Pleas, Harvey was convicted of first degree murder and a sentence of death imposed. Upon appeal to the Pennsylvania Supreme Court, the judgment of sentence was vacated and the matter remanded for a new sentencing hearing. The trial court subsequently imposed a sentence of life imprisonment and Harvey filed a timely Post-Conviction Relief Act ("PCRA") petition. Post-conviction counsel filed a <u>Finley</u>, or "no-merit" letter, and in 2009 the Pennsylvania Superior Court denied Petitioner's request for collateral relief. Thereafter, pursuant to the provisions of 28 U.S.C. § 2254, Harvey filed the instant petition for a writ of habeas corpus. We referred the matter to the magistrate, who has submitted a Report and

Recommendation ("R & R") and the Petitioner has interposed objections. (Doc. No. 47). We approve and adopt the R & R and deny the petition for a writ of habeas corpus. The request for a certificate of appealability is denied.

We write simply to supplement Judge Rapoport's conclusions, in particular to contribute our views on how the facts of Petitioner's offense severely curtailed the strategic options available to trial counsel. Only from an understanding of the facts of Petitioner's case can a reviewing court truly appreciate the difficulty trial counsel faced in mounting a viable defense. Context truly matters. While certain aspects of the proceedings in the state court were atypical, it is our firm conclusion that this petition should not be granted. As we examine the performance of counsel, we must appreciate the unassailable nature of the government's evidence and also that this strong evidence substantially restricted counsel's strategic options. In sum, the quantum and quality of the government's evidence contributes to the template against which we measure counsel's performance and determine whether a deficient performance or ensuing prejudice is present.

The following facts underlie the present petition. On January 10, 1998, Petitioner shot his cousins, Shawn and Charity Wilkins, in their home in Philadelphia. Charity, who lost sight in her left eye as a result of this incident, was thirteen and her brother Shawn, who was killed, was twenty-two. Immediately prior to the homicide, Charity was on the first floor of the home babysitting two young children, aged three and four. When Petitioner and her brother Shawn arrived at the house, both men immediately went upstairs to the decedent's bedroom and closed the door. A few minutes later, Charity heard gunshots. She promptly headed upstairs, retrieved

the sleeping child, and returned downstairs. Harvey, armed with two guns, then came on the staircase. He pointed one gun at Charity and commanded her to come upstairs. Charity complied, and sat on the bed in Shawn's bedroom. There, Charity saw her brother motionless in the corner, although she did not appear to realize that he was dead. Petitioner, still pointing the guns at her, ordered her to lie on the floor. When Charity refused, telling Harvey she was watching the children and had to go downstairs to tend to them, he directed her to lie on the bed. When she complied, he shot her in the left temple causing her to lose consciousness. She awakened to the sound of banging on the front door and went downstairs. She opened the front door and met another cousin, Joseph Seagraves. He took her to the home of a neighbor and the neighbor put a towel around Charity's head. The three sat on the porch and awaited transportation to the hospital. Charity was admitted to Children's Hospital for sixteen days. Having sustained three separate gunshot wounds to the head, she had lost sight in her left eye. Homicide detectives interviewed her in the hospital on January 11, 1998, the day after she was shot.

   On January 12, 1998, two days after the shootings, Philadelphia Police Homicide Detective Joseph Bamberski spoke with Petitioner. When he learned that Harvey was sixteen, Bamberski arranged for Harvey's mother to come to the station. The detective advised Petitioner's mother that her son was going to be arrested for murder and allowed the two to speak privately for thirty to forty-five minutes. When their private conversation concluded, both advised the detective that Harvey wished to make a statement. According to Harvey's mother, the detective simply advised Harvey to tell the truth. Following the appropriate warnings and

waiver of rights, Harvey gave a statement which was recorded verbatim. All pages of the statement were initialed by the Petitioner and his mother and, after review of the final statement, neither made any corrections. In this statement, Harvey advised the detective that when he entered the Wilkins residence with Shawn, "his little sister," Charity, was in the home. (October 27, 1998 Trial Tr. at 39). The two men went upstairs and Harvey gave Wilkins currency in exchange for drugs. Shawn counted the money, which was:

> "a little off, so he smacked me. Then he pulled his gun out of his pocket and set it on the bed. Then he started walking towards me, and I grabbed the gun that was on the dresser and I shot him. I aimed the gun at him first, and I told him to back up. He was backing up, and I thought he was going to reach for his gun, so I shot him.
>
> Then his little sister came running up the steps. She pushed open the door, and that's when I shot her. After I shot her, I laid Charity on the bed. And there were two little kids downstairs who were crying, so I went downstairs and set the kids on the couch. I heard somebody knocking on the door, so I left out the back."

(October 27, 1998 Trial Tr. at 39).

The remaining Commonwealth evidence was presented by way of stipulation. Following transportation of the body of Shawn Wilkins to the Office of the Medical Examiner, a search was conducted and the victim did not have any weapons or cash. A search of the rear of the property did not yield any physical evidence, although the rear door was "hanging on its hinges." (October 27, 1998 Trial Tr. at 13). Police found six fired cartridge cases in the decedent's bedroom, four .40 caliber jackets and two .22 caliber casings. Nine packets of cocaine and one mutilated projectile were also found in the bedroom. (October 27, 1998 Trial Tr. at 13-14).

The testimony of the two pathologists who conducted the autopsy was also presented by stipulation. Their examination revealed that Wilkins had been shot six times, twice in the back

4

of the head, once in the lip, twice in his rear torso and once in the upper arm. (October 27, 1998 Trial Tr. at 16). Evidence of close range firing was absent. Wilkins had no trace of drugs or alcohol in his system. Three mutilated projectiles were recovered from Wilkins' body. (October 27, 1998 Trial Tr. at 17). Charity was shot three times, once in the temple, the cheek and the neck.

In his pro se § 2254 petition, Harvey asserted six separate claims of ineffective assistance of trial counsel. In his claims, Petitioner contends that trial counsel failed to: (1) properly consult with Petitioner prior to trial; (2) investigate the credibility of Petitioner's confession before advancing a self-defense claim; (3) investigate and seek to suppress the involuntary confession; (4) obtain Petitioner's consent prior to entering into factual stipulations; (5) interview and effectively cross-examine the Government's primary witness, Charity Wilkins; and (6) identify, during a pretrial investigation, the facts which ultimately made the pursuit of the self-defense claim untenable.

Following submission of the R & R Harvey interposed two additional objections, contending that Magistrate Rapoport erred because he "should have reviewed Harvey's claims de novo." (Doc. No. 47, at 7.) He also contends that the magistrate erred in concluding that certain claims had been litigated in state court. (Doc. No. 47, at 3-7.) We disagree and find that because the challenged claims were litigated in state court, Magistrate Rapoport's recommendation is legally correct.

Petitioner's habeas petition is governed by the AEDPA, which provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted with respect to any claim that was

adjudicated on the merits in State Court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2).

Petitioner is entitled to relief under the "contrary to" clause only if the "state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). Relief is appropriate under the "unreasonable application" clause only where the state court decision is an erroneous and objectively unreasonable application of federal law. Waddington v. Sarausad, 555 U.S. 179, 190 (2009). With respect to 28 U.S.C. § 2254(d)(2), a claim that the state court adjudication was based on an unreasonable determination of the facts in light of the evidence presented, Harvey must demonstrate that a reasonable fact-finder could not have reached the same conclusion given the evidence; if a reasonable basis existed, habeas relief is not warranted. Campbell v. Vaughn, 209 F.3d 280, 290-91 (3d Cir. 2000). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). See also Appel v. Horn, 250 F.3d 203, 209 (3d Cir. 2001).

Petitioner initially asserts that Magistrate Judge Rapoport erroneously determined that the following underlying allegations of ineffective assistance of counsel were adjudicated on direct appeal: (1) failure to properly consult with Petitioner prior to trial; (3) failure to investigate and seek to suppress the purportedly involuntary confession; (4) failure to obtain Petitioner's consent prior to entering into factual stipulations; and (5) failure to prepare for and properly cross-

examine Charity Wilkins.

Magistrate Judge Rapoport correctly concluded that in addition to Petitioner's claim that counsel failed to adequately consult and interview with him prior to trial, Petitioner also alleged claims on direct appeal that were "substantially identical to Harvey's third, fourth, and fifth habeas claims."  (R&R at 19; see Resp. Ex. F at 9-10, 20-21.)  The Pennsylvania Supreme Court reviewed Harvey's trial and sentencing proceedings pursuant to 42 Pa.C.S. § 9711(h) because a sentence of death had been imposed, made factual findings and legal conclusions.  Their opinion evaluated these claims and denied relief.  Commonwealth v. Harvey, 571 Pa. 533 (2002).  Thus, Magistrate Judge Rapoport correctly concluded that claims 1, 3, 4, and 5 were adjudicated on direct appeal.

In his second objection, Petitioner argues that Magistrate Judge Rapoport erroneously relied on the Pennsylvania courts' factual findings rather than conduct a de novo review of his claims.  In accordance with the AEDPA, state court findings of fact are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).  This presumption applies even if a finding was made by a state court of appeals rather than by the state trial court.  Stevens v. Del. Corr. Ctr., 295 F.3d 361, 368 (3d Cir. 2002).  In the instant matter, Petitioner has provided no evidence or argument to sufficiently rebut this presumption.  Therefore, Magistrate Judge Rapoport appropriately deferred to the Pennsylvania courts' findings of fact.

This Court interprets the remainder of Petitioner's objections to allege that the state court applied law to Petitioner's claims that was "contrary to" or an "unreasonable application" of clearly established federal law, and that Magistrate Judge Rapoport erroneously concluded otherwise.  Such objections are without merit.

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme Court determined that Section 2254(d)(1) established two distinct paths to invalidate a state decision on federal habeas review. First, federal habeas relief is warranted if a state decision is "contrary to ... clearly established Federal law." 28 U.S.C. 2254(d)(1). This path applies when a state court's actions are "diametrically different" or "mutually opposed" to clearly established law. <u>Williams</u>, 529 U.S. at 406. Second, federal habeas relief is appropriate if the state decision "involves an unreasonable application of ... clearly established Federal law." 28 U.S.C. 2254(d)(1). This path encompasses cases in which the state court applies the proper Supreme Court precedent to specific facts in an objectively unreasonable way or where the court unreasonably extends (or refuses to extend) a clearly established rule. <u>Williams</u>, 529 U.S. at 409. To comply with this deferential standard, a state court is not required to cite or even be aware of relevant Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).

The applicable, clearly established law governing Sixth Amendment claims of ineffective assistance of counsel is the two-prong test of <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). To successfully invoke <u>Strickland</u>, the petitioner must prove: (1) that "counsel's performance was deficient," and (2) that counsel's "deficient performance prejudiced the defense." <u>Strickland</u> 466 U.S. at 687. In the instant matter, the state court's denial of Petitioner's ineffective assistance of counsel claims was not "diametrically different" or "mutually opposed" to the clearly established law in <u>Strickland</u>, and the state court did not apply <u>Strickland</u> in an objectively unreasonable way. Rather, Petitioner's claims simply did not satisfy the two-prong <u>Strickland</u> test.

In his first claim, Petitioner argues that trial counsel was ineffective because counsel

8

failed to adequately consult with Petitioner prior to trial. The Pennsylvania Supreme Court rejected this claim because Petitioner did not "allege any issues that his counsel should have raised or any beneficial information that his counsel would have discovered had further pretrial consultations been held." (Resp. Ex. C. at 7.) Petitioner failed to prove that any further consultation prior to trial would have helped his defense. Thus, the state court correctly held that Petitioner failed to demonstrate prejudice, and therefore his claim fails under Strickland.

In his second claim, Petitioner argues that trial counsel was ineffective because he failed to investigate the credibility of Petitioner's confession before proceeding with a self-defense theory. In his objections, Petitioner stresses that his statement was false and undermined by the evidence at trial. That may be so, but it was Petitioner's statement. The statement was introduced by the government in their case-in-chief to establish the identity of the shooter, limit Harvey's potential factual presentation at trial to the sequence of events set forth in the statement, and to preemptively weaken any possible claim of self-defense. Once the statement was presented in the government's case in chief, counsel simply sought to exploit the exculpatory aspects of the statement to Petitioner's advantage. The defense failed because justification is difficult to establish when the defendant has shot the victim six times, with four of the shots fired into the rear of decedent's body while the decedent faced away from the defendant. Justification is also difficult to establish when, immediately after the homicide, the defendant commands a thirteen year old girl to come upstairs and proceeds to shoot her three times in the head. That the defense was unsuccessful, and even flawed, is not a measure of counsel's effectiveness because counsel's strategic choices are always constrained by the evidence. See Zettlemoyer v. Fulcomer, 923 F.2d 284, 296 (3d Cir. 1991).

Moreover, despite Petitioner's objections, the statement was corroborated in essential part

9

by testimony of the surviving witness, Charity Wilkins.  Given those circumstances, counsel's decision to pursue a self-defense theory, the best available option, was therefore reasonable, and certainly not "deficient."  As a result, the state court properly applied <u>Strickland</u> in holding that Petitioner's claim lacked merit.

In his third claim, Petitioner argues that trial counsel should have moved to suppress his statement on the ground that it was involuntary.  Nonetheless, after thorough consideration of the facts surrounding Petitioner's interrogation, the Pennsylvania Supreme Court determined that, based on the totality of circumstances, the confession was voluntary and therefore admissible.  <u>See</u> Resp. Ex. C. at 9.  Therefore, the Pennsylvania Court's determination that trial counsel was not ineffective for failing to pursue the meritless suppression claim was a reasonable application of <u>Strickland</u>.

In his fourth claim, Petitioner attacks counsel's failure to examine evidence and obtain Petitioner's consent prior to entering into factual stipulations.  Specifically, Petitioner argued that counsel failed to introduce evidence of a firearm and ammunition in the victim's car, which Petitioner urges would have helped establish the victim's violent propensities. The Pennsylvania Supreme Court addressed this claim.  "[T]he gun at issue was found outside of the home in Shawn's car, not inside the house where Shawn was killed....[T]he fact that an additional gun was found in Shawn's car would only have been cumulative evidence regarding his violent propensities, and accordingly, counsel's decision not to introduce this evidence did not prejudice" petitioner.  <u>Com v. Harvey</u>, 571 Pa. 533, 546  (2002).  Thus, the Pennsylvania Court properly held that Petitioner failed to demonstrate prejudice under <u>Strickland</u>.

In his fifth claim, Petitioner alleges that trial counsel failed to prepare for and properly cross-examine the government's primary witness, Charity Wilkins.  The Pennsylvania Supreme

10

Court addressed this issue on direct appeal and concluded that Petitioner failed to demonstrate how a hypothetical cross-examination of Charity Wilkins would have been helpful to his defense. In his objections, Petitioner acknowledges that "Charity Wilkins' testimony was not essential to the conviction but corroborative, because of Harvey's confessions to the police." (Doc. No. 47, at 25.)

While trial counsel might have sought to interview Charity pretrial, Harvey has failed to establish whether Charity would have spoken with an investigator or what favorable information this hypothetical interview would have yielded. She has never wavered in her position that Harvey went upstairs with her brother moments before the murder and that Petitioner then shot her. Harvey suggests that trial counsel should have confronted Charity with inconsistencies from her preliminary hearing testimony, but Harvey fails to appreciate the devastating emotional impact of the testimony of a thirteen year old, shot in the head three times and blinded in one eye, offered against her cousin. Most competent trial lawyers would handle this witness gently, seeking to minimize the damage an extensive cross-examination would yield. Because Petitioner was unable to prove that a more extensive cross-examination of Charity Wilkins would have helped his defense, the Pennsylvania Court reasonably held that Petitioner failed to establish prejudice under Strickland.

In his sixth and final claim, Petitioner asserts that counsel failed to investigate facts that would have rendered counsel's decision to pursue a self-defense claim unreasonable. While trial counsel is generally required to make reasonable investigations, he is "not bound by an inflexible constitutional command to interview every possible witness. Instead, counsel [is] simply required to exercise reasonable professional judgment." Lewis v. Mazurkiewicz, 915 F.2d 106, 113 (3d Cir. 1990). Magistrate Judge Rapoport found that the facts of this case are not highly

complex, and counsel appeared quite conversant with them while conducting the defense.

Indeed, the facts do not suggest an alternative defense. The ultimate truth is that the government's facts were overwhelming, leaving no gaps in which counsel could construct a viable defense. Mistaken identification or alibi were not options. Petitioner was observed by his thirteen year old cousin headed to the decedent's bedroom in the company of the decedent moments before the gunshots. No other adults were in the home. Immediately after the homicide, Harvey, wielding two guns, compelled the thirteen year old to come upstairs and he then shot her three times in the head. She saw the first shot. Shawn Wilkins was shot six times with two guns, with two bullets fired into the rear of his head and two into his back. No weapons were found in the bedroom. Charity promptly identified Harvey as the shooter and two days later, after consultation with his mother, Harvey gave a statement in which he admitted shooting Charity and Shawn, but which is best described as an imperfect assertion of the defense of justification. Harvey complains about the preparation and performance of his attorney, but he fails to identify a realistic alternative strategy. He fails to demonstrate actual prejudice. There were no other adults in the home so the defense could not suggest that another committed the crime. Harvey could not present an alibi because his cousin knew his identity and he made a statement of partial admission. Joseph Seagraves, who knocked at the front door, did not gain admission until Charity regained consciousness so he could not be the shooter.

Our review of the trial transcripts indicates counsel asked appropriate questions of all witnesses and tendered stipulations to matters that were not genuinely in dispute, all of which related to incontrovertible objective circumstances. None of the stipulations were tantamount to an admission of guilt. Nor does Harvey identify any actual prejudice inuring from those stipulations.

When Harvey rejected the pretrial plea offer, counsel was left with one option, which was not particularly compelling.[1] Counsel pursued that option and chose to rely upon Petitioner's statement in an effort to establish self-defense. If the fact-finder thought the defense incomplete or imperfect, the statement would perhaps establish a mistaken belief of self-defense, potentially limiting any conviction to voluntary manslaughter, rather than first degree murder. See 18 Pa.C.S.A.§ 2503(b ). Harvey has failed to demonstrate that this strategy was unreasonable. He offers no better strategy and has failed to tender evidence of actual prejudice. In conclusion, the state court properly held that Petitioner failed to demonstrate that counsel's performance was deficient under Strickland.

We adopt Magistrate Rapoport's Report and Recommendation and dismiss this petition.

Accordingly, this 28th day of September, upon careful and independent consideration of the pleadings and record herein, and after review of the R & R (Doc. No. 44) and Petitioner's Objections to the R&R (Doc. No. 47), it is hereby ORDERED as follows:

1. The Report and Recommendation is APPROVED and ADOPTED.

2. The petition for a writ of habeas corpus is DENIED.

3. A certificate of appealability is not granted.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.

---

[1] The government kept the plea offer open until the verdict was entered. Following the entry of the guilty verdict, defense counsel stated "[a]nd I had his mother in to talk to him. His mother advised him that he should take the deal because of the evidence that was involved. And my advice to him at the time, Your Honor, was that he should accept the deal that was offered by the Commonwealth []." (October 27, 1998 Trial Tr. at 90). Plainly the quality of the government's evidence constrained defense options.